Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MORICONI,<br><br>  Plaintiff,<br><br>  v.<br><br>TERRAFORM POWER, INC., BRIAN LAWSON, CAROLYN J. BURKE, CHRISTIAN S. FONG, HARRY GOLDGUT, RICHARD LEGAULT, MARK MCFARLAND, and SACHIN SHAH,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Christopher Moriconi ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against TerraForm Power, Inc. ("TerraForm" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of TerraForm with Brookfield Renewable Partners L.P. ("BEP"), Brookfield Renewable Corporation ("BEPC"), and 2252876 Alberta ULC, a wholly owned subsidiary of BEP ("Acquisition Sub"), and TerraForm Power NY Holdings, Inc., a wholly owned direct subsidiary of TerraForm ("Holdings").

2. On March 16, 2020, the Company and BEP and certain of their affiliates entered into an Agreement and Plan of Reorganization (the "Merger Agreement") for BEP and its affiliates to acquire all of the Company's outstanding shares of Class A common stock, other than the approximately 62% already owned by BEP and its affiliates, pursuant to which TerraForm shareholders will be entitled to receive either 0.381 Class A exchangeable shares of BEPC or 0.381 of a limited partnership unit of BEP per share.

3. On June 29, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") in connection with the Proposed Transaction.

4. The Proxy Statement, which recommends that TerraForm shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) TerraForm's and BEP's financial projections; (2) the financial analyses performed by TerraForm's Special Committee's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Greentech Capital Advisors Securities, LLC ("Greentech"), in connection with their fairness opinions; and (3) potential conflicts of interest involving Morgan Stanley.

5. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision relating to the Proposed Transaction. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the

Proposed Transaction.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff is, and has been at all relevant times hereto, an owner of TerraForm's common stock.

11. Defendant TerraForm, together with its subsidiaries, acquires, owns, and operates solar and wind power generation assets. The Company is incorporated in Delaware and headquartered in New York City. The Company's Class A common stock trades on the Nasdaq Global Select Market under the ticker symbol, "TERP."

3

12. Defendant Brian Lawson ("Lawson") is Chairman of the Board of the Company. Defendant Lawson is a Vice Chair of Brookfield Asset Management. Defendant Lawson joined Brookfield in 1988, and has held a number of senior management positions in Brookfield's investment and finance operations, including serving as Chief Financial Officer ("CFO") of Brookfield Asset Management from 2002 to 2020.

13. Defendant Carolyn J. Burke ("Burke") is a director of the Company and a member of the special committee of the Board (the "Special Committee").

14. Defendant Christian S. Fong ("Fong") is a director of the Company and a member of the Special Committee.

15. Defendant Harry Goldgut ("Goldgut") is a director of the Company and Executive Chairman of Brookfield's infrastructure and power groups and has been with Brookfield since 1997.

16. Defendant Richard Legault ("Legault") is a director of the Company. Defendant Legault is Vice Chairman of Brookfield Asset Management and sits on several boards for the Brookfield group, including that of Isagen and Westinghouse Corporation. From 2015 to 2018, Defendant Legault served as Executive Chairman of BEP.

17. Defendant Mark McFarland ("McFarland") is a director of the Company and the Chair of the Special Committee.

18. Defendant Sachin Shah ("Shah") is a director of the Company. Defendant Shah is a Senior Managing Partner and Chief Executive Officer ("CEO") of the Brookfield Renewable Group and CEO of BEP. Defendant Shah joined Brookfield in 2002 and has held a variety of senior finance roles across the organization, including serving as the CFO of BEP in 2011.

4

19. Defendants Lawson, Burke, Fong, Goldgut, Legault, McFarland, and Shah are collectively referred to herein as the "Individual Defendants."

20. Defendants TerraForm and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

21. BEP owns a portfolio of renewable power generating facilities primarily in North America, Colombia, Brazil, Europe, India, and China. BEP is incorporated and headquartered in Bermuda. BEP's limited partnership units trade on the New York Stock Exchange under the ticker symbol, "BEP."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. On March 16, 2020, TerraForm and BEP announced that they entered into a definitive merger agreement for BEP to acquire all of the outstanding shares of TerraForm's Class A common stock, other than the approximately 62% currently owned by BEP and its affiliates.

23. According to the press release announcing the merger, each share of TerraForm's Class A common stock will be acquired for consideration equivalent to 0.381 of a BEP unit. For each share of TerraForm's Class A common stock held, TerraForm shareholders will be entitled to receive, at their election, either Class A shares of BEPC or limited partnership units of BEP. The press release announcing the merger states, in pertinent part:

**BROOKFIELD RENEWABLE AND TERRAFORM POWER ENTER INTO A DEFINITIVE MERGER AGREEMENT**

March 16, 2020 21:49 ET | **Source:** Brookfield Renewable Partners L.P.

*All amounts in U.S. dollars unless otherwise stated*

- *Each share of Class A common stock of TERP will be acquired for consideration equivalent to 0.381 of a BEP unit, which represents a 17% premium to TERP's unaffected trading price[1]. TERP shareholders can elect to receive BEPC shares or BEP units*
- *Combined business will be one of the largest, integrated pure-play renewable power companies in the world with one of the strongest investment grade balance sheets in the sector, no material near term maturities, and a 20-year track record of creating shareholder value across multiple economic cycles*
- *Available liquidity of the combined company will approximate $3.1 billion and shareholders will benefit from $5 billion of private capital available from Brookfield's unlisted fund*
- *TERP shareholders will benefit from a broader growth mandate that includes the acquisition of global, multi-technology renewable power assets and development opportunities, an investment grade balance sheet, increased liquidity, and enhanced diversification*
- *The Special Committee of TERP's Board of Directors unanimously recommends the transaction*

BROOKFIELD, NEWS, March 16, 2020 (GLOBE NEWSWIRE) -- Brookfield Renewable Partners L.P. ("Brookfield Renewable" or "BEP") (TSX: BEP.UN; NYSE: BEP) and TerraForm Power, Inc. ("TerraForm Power" or "TERP") (Nasdaq: TERP) today announced that they have entered into a definitive merger agreement for Brookfield Renewable to acquire all of the outstanding shares of Class A common stock of TerraForm Power, other than the approximately 62% currently owned by Brookfield Renewable and its affiliates.

Each share of Class A common stock of TerraForm Power will be acquired for consideration equivalent to 0.381 of a Brookfield Renewable unit.[1] For each share of TerraForm Power's Class A common stock held, TERP shareholders will be entitled to receive, at their election, either Class A shares of Brookfield Renewable Corporation ("BEPC shares") or limited partnership units of Brookfield Renewable ("BEP units").

The Special Committee of the Board of Directors at TerraForm Power (the "Special Committee"), comprised solely of non-executive, independent directors of TerraForm Power, has unanimously recommended that TERP shareholders approve the transaction. The Special Committee believes the transaction is fair to and in the best interests of TERP and its unaffiliated shareholders.

\*     \*     \*

**Transaction Details**

---

[1] Based on unaffected trading prices of $15.60/share and $48.07/unit for TERP and BEP, respectively at market close on January 10, 2020.

As consideration for the transaction, TERP shareholders can elect to receive, for each share of TerraForm Power Class A common stock held, either BEPC shares or BEP units. Consideration for each share of Class A common stock of TERP will be equivalent to 0.381 of a BEP unit. TERP shareholders who do not make any election will receive BEPC shares. There is no limit on the number of TERP shares that may be exchanged for BEPC shares or BEP units.

As previously announced, Brookfield Renewable also intends to make a special distribution of BEPC shares to its unitholders. BEPC is a Canadian corporation and will be listed on the TSX and NYSE. The BEPC shares are structured with the intention of being economically equivalent to a BEP unit, including identical distributions, as and when declared, and will be fully exchangeable at any time, at the shareholder's option, for a BEP unit on a one-for-one basis. As such, offering TERP shareholders the right to elect to receive BEP units or BEPC shares provides them the option of investing in Brookfield Renewable through a partnership or corporate structure. The exchange ratio will proportionally reflect the contemplated special distribution of BEPC shares to Brookfield Renewable unitholders, which we expect to close concurrently with the closing of the transaction.

The transaction is subject to, among other things, the non-waivable approval of TERP shareholders representing a majority of the outstanding shares of TERP Class A common stock not owned by Brookfield Renewable and its affiliates. The transaction is also subject to other customary closing conditions and is expected to close in the third quarter of 2020.

BMO Capital Markets and Scotiabank are serving as financial advisors and Cravath, Swaine & Moore LLP and Torys LLP are serving as legal counsel to Brookfield Renewable.

Morgan Stanley & Co. LLC and Greentech Capital Advisors are serving as financial advisors and Kirkland & Ellis LLP and Richard, Layton and Finger LLP are serving as legal counsel to the Special Committee.

**Brookfield Renewable Partners**

Brookfield Renewable operates one of the world's largest publicly traded, pure-play renewable power platforms. Our portfolio consists of hydroelectric, wind, solar and storage facilities in North America, South America, Europe and Asia, and totals approximately 19,000 megawatts of installed capacity and an approximately 13,000 megawatt development pipeline. Brookfield Renewable is listed on the New York and Toronto stock exchanges. Further information is available at https://bep.brookfield.com. Important information may be disseminated exclusively via the website; investors should consult the site to access this information.

Brookfield Renewable is the flagship listed renewable power company of Brookfield Asset Management, a leading global alternative asset manager with over $540 billion of assets under management.

**TerraForm Power**

TerraForm Power owns and operates a best-in-class renewable power portfolio of solar and wind assets located primarily in the U.S. and E.U., totaling more than 4,200 MW of installed capacity. TerraForm Power's goal is to acquire operating solar and wind assets in North America and Western Europe. TerraForm Power is listed on the Nasdaq Stock Market (Nasdaq: TERP).

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

24. The Proxy Statement, which recommends that TerraForm shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) TerraForm's and BEP's financial projections; (2) the financial analyses performed by Morgan Stanley and Greentech, in connection with their fairness opinions; and (3) potential conflicts of interest involving Morgan Stanley.

25. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Special Committee's Recommendation; (ii) Reasons for the TerraForm Power Board's Recommendation; (iii) Recommendation of the TERP Board and the Special Committee; (iv) Opinions of Financial Advisors to the Special Committee of TerraForm Power; and (v) Certain TerraForm Power Forecasts.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the July 29, 2020 shareholder vote, TerraForm shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning TerraForm's and BEP's Financial Projections

27. The Proxy Statement omits material information concerning TerraForm's and BEP's financial projections.

28. The Proxy Statement provides financial forecasts prepared by TerraForm management consisting of: (1) the Net Asset Value (NAV) Model;[2] and (2) the Five-Year Business Plan Model (collectively, the "TerraForm Power Forecasts").[3]

29. The Proxy Statement provides financial forecasts for BEP, including (1) the BEP Management Forecasts; and (2) the Adjusted BEP Forecasts (collectively, the "BEP Forecasts").[4]

30. The Proxy Statement fails to disclose the following concerning the TerraForm Power Forecasts and BEP Forecasts: (1) all line items used to calculate (i) Adjusted EBITDA, (ii) Cash Available for Distribution, (iii) Cash Flow to Equity, and (iv) Funds from Operations; (2) all updates and adjustments made to the TerraForm Power Forecasts and BEP Forecasts; and (3) a reconciliation of all non-GAAP to GAAP metrics.

31. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage

---

[2] The Net Asset Value Model was purportedly "prepared in the ordinary course of business to allow TerraForm Power management to forecast TerraForm Power's expected annual cash flows [and] . . . [was] prepared using bottom-up estimates based on individual project level cash flows."

[3] The Five-Year Business Plan Model purportedly "reflects, for the years 2020-2024, TerraForm Power's existing portfolio of assets including asset acquisitions already identified by TerraForm Power in the fourth quarter of 2019 and the first quarter of 2020 but that had not yet closed at time the Five-Year Business Plan Model was prepared (both such acquisitions have since closed)."

[4] According to the Proxy Statement, BEP provided the BEP Management Forecasts to the Special Committee and Morgan Stanley and Greentech. Further, the Special Committee's financial advisors adjusted the BEP Management Forecasts upon direction of the Special Committee and in consultation with TerraForm management, creating the Adjusted BEP Forecasts.

rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[5]

32. The disclosure of the aforementioned projected financial information is material because it would provide TerraForm shareholders with a basis to project the future financial performance of TerraForm and the combined company and would allow shareholders to better understand the financial analyses performed by TerraForm's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by TerraForm and its financial advisors, TerraForm's shareholders are unable to determine how much weight, if any, to place on the Company's advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

33. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of TerraForm's and BEP's

---

[5] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jul. 14, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

34. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to TerraForm shareholders.

### 2. Material Omissions Concerning Morgan Stanley's and Greentech's Financial Analyses

35. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Morgan Stanley and Greentech.

36. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley and Greentech in rendering their purported fairness opinions must be fairly disclosed to TerraForm shareholders. The description of Morgan Stanley's and Greentech's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, TerraForm shareholders are unable to fully understand Morgan Stanley's and Greentech's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to TerraForm shareholders.

**A.** *Morgan Stanley's Analyses*

37. The Proxy Statement fails to disclose the following concerning Morgan Stanley's Levered Discounted Cash Flow Analysis (NAV Model Analysis): (1) the estimated future free cash flows to equity of TerraForm and all underlying line items thereto; and (2) the individual inputs and assumptions underlying the discount rates of 4.1% and 5.1%.

11

38. The Proxy Statement fails to disclose the following concerning Morgan Stanley's Levered Discounted Cash Flow Analysis (Five-Year Business Plan Model Analysis): (1) the individual inputs and assumptions underlying the discount rates of 4.1% and 5.1%; and (2) the projected terminal value of TerraForm as of December 31, 2024.

39. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "Equity Research Analysts' Price Targets": (1) the individual price targets for TerraForm observed by Morgan Stanley in its analysis; (2) the sources of those price targets; and (3) the individual inputs and assumptions underlying the 4.6% discount rate.

B. *Greentech's Analyses*

40. The Proxy Statement fails to disclose the following concerning Greentech's Discounted Cash Flow Analysis of TerraForm: (1) all line items used to calculate levered cash flows; (2) implied terminal values for TerraForm; and (3) the individual inputs and assumptions underlying the (i) discount rate range of 5.95% to 6.45%, and (ii) perpetual growth rates of 0.75% to 1.25%.

41. The Proxy Statement fails to disclose the following concerning Greentech's Discounted Cash Flow Analysis of BEP: (1) all line items used to calculate levered cash flows; (2) implied terminal values for BEP; and (3) the individual inputs and assumptions underlying the (i) discount rate range of 5.92% to 6.42%, and (ii) perpetual growth rates of 1.25% to 1.75%.

42. The Proxy Statement fails to disclose the following concerning Greentech's "Sum-of-the-Parts Analysis": (1) the cash flows to equity and terminal value of each individual project; (2) the individual inputs and assumptions underlying the discount rates and multiples utilized by Greentech in its analysis; and (3) the value ascribed to the future growth of assets and cash flow for the years 2020 to 2024, to be realized through acquisitions and organic investments, and funded

through the sale of certain assets or through the sale of new shares of TerraForm common stock.

43. The Proxy Statement fails to disclose the following concerning Greentech's analysis of research analysts' price targets for TerraForm and BEP: (1) the individual price targets observed by Greentech in its analysis; and (2) the sources of those price targets.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

44. The Proxy Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

45. The Proxy Statement provides that:

In the two years prior to the date it rendered its opinion in connection with the TERP acquisition, in addition to the services described in this proxy statement/prospectus, Morgan Stanley and its affiliates provided financial advisory services to TerraForm Power and its affiliates, and received aggregate fees of approximately $5 to $15 million in connection with such services. In addition, in the two years prior to the date it rendered its opinion in connection with the TERP acquisition, Morgan Stanley and its affiliates provided financial advisory or financing services for BEP or its affiliates, including certain portfolio companies or affiliates of BAM (an affiliate of BEP), and received aggregate fees of approximately $65 to $90 million in connection with such services.

46. The Proxy Statement, however, fails to disclose the specific timing and nature of the past services Morgan Stanley provided to TerraForm, BEP, and/or their affiliates.

47. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

48. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to TerraForm shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

52. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

59. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 14, 2020        Respectfully submitted,

                 **HALPER SADEH LLP**

                 By: /s/ Daniel Sadeh
                 Daniel Sadeh, Esq.
                 Zachary Halper, Esq. (to be admitted *pro hac vice*)
                 375 Park Avenue, Suite 2607
                 New York, NY 10152
                 Telephone: (212) 763-0060
                 Facsimile: (646) 776-2600
                 Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

*Counsel for Plaintiff*